## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DAWN CORBIER, as Administrator of the ESTATE OF JOSHUA B. JURCICH, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| ST. CLAIR COUNTY SHERIFF RICHARD WATSON, MAJOR PHILLIP MCLAURIN, ST. CLAIR COUNTY, OFFICER STEVEN J. FRIEDRICH, OFFICER JAMES D. WAGENER, OFFICER TERRENCE E. OWENS, SERGEANT DAVID NICHOLS, OFFICER MARK J. HARRIS, OFFICER DANTE S. BEATTIE, OFFICER THOMAS MESEY, OFFICER ERIC L. WALTER, LIEUTENANT NANCY SUTHERLIN, SERGEANT MISSEY, OFFICER PATRICK FULTON, OFFICER CHRIS LANZANTE, OFFICER JON KNYFF, LIEUTENANT JOHN FULTON, SERGEANT BRIAN CUNNINGHAM, OFFICER DANE BRUEGGEMANN, OFFICER HOWARD KURTZ, OFFICER LESLIE RIVERA, OFFICER MIKE RIPPERDA, OFFICER NICOLE LIEBIG, OFFICER CHARLES GERMAINE, WEXFORD HEALTH SOURCES, INC., NURSE BRANDY NICHOLS, NURSE SANDRA THURMAN, NURSE JANA REUTER, DOCTOR MUDDASANI REDDY, JOHN DOES 1-4, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## **COMPLAINT**

Plaintiff Dawn Corbier, as Administrator for the Estate of her son Joshua B. Jurcich, by

her undersigned attorneys, for his complaint against Defendants St. Clair County Sheriff Richard

1

Watson, Major Phillip McLaurin, St. Clair County, Officer Steven J. Frierdich, Officer James D. Wagener, Officer Terrance E. Owens, Sergeant David Nichols, Officer Mark J. Harris, Officer Dante S. Beattie, Officer Thomas Mesey, Officer Eric L. Walter, Lieutenant Nancy Sutherlin, Sergeant Missey, Officer Patrick Fulton, Officer Chris Lanzante, Officer Jon Knyff, Lieutenant John Fulton, Sergeant Brian Cunningham, Officer Dane Brueggemann, Officer Howard Kurtz, Officer Leslie Rivera, Officer Mike Ripperda, Officer Nicole Liebig, Officer Charles Germaine, Wexford Health Sources, Inc., Nurse Brandy Nichols, Nurse Sandra Thurman, Nurse Jana Reuter, Doctor Muddasani Reddy, and John or Jane Does 1-4, alleges as follows:

## INTRODUCTION

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Joshua B. Jurcich's rights as secured by the Fourteenth Amendment to the United States Constitution.

2. Joshua B. Jurcich was a devoted father and loving son. He had a love for animals, the arts, and music. He also lived with addiction and mental illness. Because of this, for 16 years, Mr. Jurcich spent a great deal of time cycling in and out of the St. Clair County Jail ("Jail").

3. Mr. Jurcich's substance abuse and mental health issues were well known to the Jails' security and medical staff. Despite this fact, Jail officials housed Mr. Jurcich in conditions that exacerbated his mental illness. On March 11, 2014, Jail staff beat Mr. Jurcich because he refused to return to a segregation cell. Immediately after the beating, Jail staff moved Mr. Jurcich to a maximum security cell.

4. While housed there, Mr. Jurcich actively voiced his intent to commit suicide. Upon being made aware of Mr. Jurcich's suicidal ideation, one sheriff's deputy responded, "He's

just going to be another dead mother f***er then." Jail staff failed to take any efforts to protect or appropriately supervise Mr. Jurcich. Less than eight hours after the beating, Jail staff found Mr. Jurcich hanging in his cell. Mr. Jurcich was transported to the hospital where he died two days later.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

6.  Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this complaint occurred in this judicial district.

## PARTIES

7.  Joshua B. Jurcich, the decedent, was a thirty-three year old who was detained at St. Clair County Jail in Belleville, Illinois from March 6, 2014, until his suicide on March 11, 2014. Under the Americans with Disabilities Act he is a qualified person who lived with the disability of serious mental illness. Plaintiff Dawn Corbier is Mr. Jurcich's mother and the duly appointed administrator of his estate.

8.  Defendant Richard "Rick" Watson is the Sheriff of St. Clair County. At all times relevant to the events at issue in this case, Defendant Watson was employed by the St. Clair County Sheriff's Department in the capacity of Sheriff. As such, he was acting under color of law. At all times relevant to the events at issue in this case, Defendant Watson promulgated rules, regulations, polices, and procedures as Sheriff of St. Clair County for the provision of certain mental health care by medical personnel and correctional officers to detainees at the St. Clair County Jail. He is sued here in his official capacity.

9.  Defendant Major Phillip McLaurin is the Superintendent of the St. Clair County Jail. At all times relevant to the events at issue in this case, Defendant McLaurin was employed

by the St. Clair County Sheriff's Department. As such, he was acting under color of law. At all times relevant to the events at issue in this case, Defendant McLaurin was responsible for implementing the policies and procedures promulgated by Defendant Watson, supervising all staff and managing all aspects of Jail operations. He is sued in his individual capacity.

10. Defendant St. Clair County is a county of the State of Illinois. It oversees the St. Clair County Sheriff's Department, which, in turn, operates the St. Clair County Jail.

11. Defendants Officer Steven J. Frierdich, Officer James D. Wagener, Officer Terrance E. Owens, Sergeant David Nichols, Officer Mark J. Harris, Officer Dante S. Beattie, Officer Thomas Mesey, Officer Eric L. Walter, Lieutenant Nancy Sutherlin, Sergeant Missey, Officer Patrick Fulton, Officer Chris Lanzante, Officer Jon Knyff, Lieutenant John Fulton, Sergeant Brian Cunningham, Officer Dane Brueggemann, Officer Howard Kurtz, Officer Leslie Rivera, Officer Mike Ripperda, Officer Nicole Liebig, and Officer Charles Germaine were employees of the St. Clair County Jail during the relevant period. At all times relevant to the events at issue in this case, these defendants were acting under color of law and within the scope of their employment with St. Clair County Jail. These defendants are sued here in their individual capacities.

12. Defendant Wexford Health Sources, Inc. ("Wexford") is a corporation headquartered in Pennsylvania transacting business in Illinois. Wexford, pursuant to a contract with St. Clair County, provides medical and mental health evaluation, care, and treatment to detainees at St. Clair County Jail. At all times relevant to the events at issue in this case, Wexford was responsible for the implementation, oversight, and supervision of policies and practices at St. Clair County Jail related to the provision of medical and mental health care. As an agent of St. Clair County, Wexford was at all times relevant to the events at issue in this case

acting under color of law by and through its lawful agents, including Defendants Nurse Brandy Nichols, Nurse Sandra Thurman, Nurse Jana Reuter, Doctor Muddasani Reddy, and John Does 1-4.

13. Defendants Nurse Brandy Nichols, Nurse Sandra Thurman, and Nurse Jana Reuter worked as part of the medical staff at St. Clair County Jail and were employed by Wexford during the relevant period. At all times relevant to the events at issue in this case, these defendants were acting under color of law and within the scope of their employment with Wexford. They were responsible for the medical care, treatment, and welfare of Mr. Jurcich while he was detained at the Jail, and failed in that responsibility. These defendants are sued here in their individual capacities.

14. Defendant Doctor Muddasani Reddy is a psychiatrist and the Mental Health Director at St. Clair County Jail. Defendant John Doe 1 is the mental health professional and/or psychiatrist who screened and evaluated Mr. Jurcich when he entered the Jail. Defendants John Doe 2, John Doe 3, and John Doe 4 are additional mental health professionals and/or psychiatrists who worked at the Jail. Defendants Doctor Reddy and John Does 1-4 were employed by Wexford during the relevant period. At all times relevant to the events at issue in this case, these defendants were acting under color of law and within the scope of their employment with Wexford. They were responsible for the mental health treatment of Mr. Jurcich while he was detained at the Jail, and failed in that responsibility. These defendants are sued here in their individual capacities.

## FACTUAL ALLEGATIONS

15. On or about March 6, 2014, Mr. Jurcich was arrested for possession of a controlled substance and taken to the St. Clair County Jail. At all times relevant to the events at issue in this case, Mr. Jurcich was housed at the Jail.

16. When Mr. Jurcich arrived at the Jail, Defendant Officer Steven J. Frierdich screened Mr. Jurcich to determine if his mental health put him at risk of harm. As a result of Mr. Jurcich's responses to several questions, Defendant Frierdich indicated that Mr. Jurcich was in need of further mental health evaluation.

17. On or about March 7, 2014, Mr. Jurcich informed Defendant Nurse Thurman that he was "dope sick" and had been diagnosed with scabies while at St. Louis University Hospital. He was thereafter placed in medical segregation in cell block AA. Upon information and belief, during the time Mr. Jurcich was placed in medical segregation, he was locked alone in his cell for 24 hours a day and prohibited from leaving—except for the occasional shower.

### Officers Beat Mr. Jurcich Hours Before He Committed Suicide

18. On March 11, 2014, around 11:00 a.m., while Defendant Officer James D. Wagener was serving lunch trays to cell block AA, Mr. Jurcich came out of his cell and walked down the stairs to the dayroom. Defendant Officer Wagener told Mr. Jurcich to return to his cell, but Mr. Jurcich refused, stating that he wanted to speak with the Lieutenant so that he could be removed from segregation. Control room operator Defendant Officer Terrance E. Owens called on the radio for assistance, and Defendants Sergeant David Nichols, Officer Mark J. Harris, Officer Dante S. Beattie, Officer Thomas Mesey, and Officer Eric L. Walter responded to the cell block.

19. Defendant Officers Wagener, Harris, and Beattie took ahold of Mr. Jurcich's jumpsuit and attempted to escort him back to his cell. Mr. Jurcich refused to return to segregation, at which point the officers began to beat Mr. Jurcich. Defendant Officer Mesey executed a pressure point hold by squeezing Mr. Jurcich's neck and face and Defendant Officers Harris and Walter slammed Mr. Jurcich to the floor. Defendant Officer Walter used his knees to strike Mr. Jurcich throughout his body. Witnesses reported that the officers eventually handcuffed Mr. Jurcich and slammed his head on the ground while he was handcuffed.

20. According to the Defendant Officers, following the struggle, Defendants Officer Mesey and Lieutenant Nancy Sutherlin escorted Mr. Jurcich to the medical office.

21. Defendant Nurse Jana Reuter examined Mr. Jurcich and cleared him for placement back in general population. Upon information and belief, despite having knowledge of Mr. Jurcich's mental health status, Defendant Nurse Reuter failed to screen Mr. Jurcich for suicidal ideation.

22. After Mr. Jurcich was cleared by Defendant Nurse Reuter, Defendants Lieutenant Sutherlin, Sergeant Missey, Officer Patrick Fulton, and Officer Mesey escorted him to cell block F-Max, where he was re-housed in Cell #6.

**Defendants Failed to Protect Mr. Jurcich from a Known and Substantial Risk of Suicide**

23. Mr. Jurcich had been housed in St. Clair County Jail sixteen times between 1998 and 2014. On at least seven occasions prior to his most recent booking, Mr. Jurcich had informed the Jail staff that he suffered from mental health problems:

    (a) Beginning September 21, 2013, Mr. Jurcich was housed in the Jail for 116 days before being transferred to Treatment Alternative for Safe Communities

("TASC"). At the time of booking, Mr. Jurcich was referred for a mental health evaluation.

(b) Beginning May 1, 2013, Mr. Jurcich was housed in the Jail for one day. At the time of booking, Mr. Jurcich was referred to medical for further mental health evaluation. The booking officer also noted on the field booking form that Mr. Jurcich was "mental."

(c) Beginning December 5, 2012, Mr. Jurcich was housed in the Jail for one day. At the time of booking, Mr. Jurcich answered yes to two of the mental health screening questions which mandates referral for further mental health evaluation, but there is no indication on the field booking form that he was in fact referred to medical for further evaluation. The booking officer noted on the form that Mr. Jurcich was "mental."

(d) Beginning August 23, 2005, Mr. Jurcich was housed in the Jail for 10 days. The booking officer noted on the field booking form that Mr. Jurcich was "mental." The field booking form does not include mental health screening questions.

(e) Beginning May 3, 2005, Mr. Jurcich was housed in the Jail for 42 days. The booking officer wrote a question mark under suicide risk and mental. This older form does not have any mental health screening questions.

(f) Beginning September 6, 2004, Mr. Jurcich was housed in the Jail for four days. The booking officer noted on the field booking form that Mr. Jurcich was "mental."

      (g) Beginning March 8, 2004, Mr. Jurcich was housed in the Jail for 25 days. The booking officer noted on the field booking for that Mr. Jurcich was suicidal.

24. Despite knowing Mr. Jurich's mental health history, and despite referring him for mental health evaluation five days prior, the officers intentionally refused to accommodate Mr. Jurcich's disability by housing him in F-Max Cell #6, which is not an adequate suicide-proof cell.

25. It is widely known throughout the correctional field and extensively documented that suicides in jails occur at a rate several times greater than in the general public. A recent study from the U.S. Department of Justice Bureau of Justice Statistics found that suicide has been the leading cause of death in jails every year since 2000. U.S. Dep't of Justice, Bureau of Justice Statistics, *Mortality in Local Jails and State Prisons, 2000-2013 – Statistical Tables*, August 2015 (available at http://wwwlbjs.gov/index.cfm?ty=pbdetail&iid=5341). A 2010 study published by the U.S. Department of Justice National Institute of Corrections reported that 47% of jail suicides were detainees who had a history of substance abuse, 38% of jail suicides were detainees who had a history of mental illness, and 50% of jail suicides occurred within 14 days of confinement. Lindsey Hayes, National Center on Institutions and Alternatives, *National Study of Jail Suicide 20 Years Later*, April 2010, at xi (available at http://static.nicic.gov/Library/024308.pdf). A 2003 study published by the Human Rights Watch also reported that "[y]oung men, persons with mental illness, alcohol and drug addicts, and people who are in custody, are amongst the most at-risk groups for suicide." Human Rights Watch, *Ill-Equipped, U.S. Prisons and Offenders with Mental Illness*, Oct. 2003, at 186 (available at https://www.hrw.org/report/2003/10/21/ill-equipped/us-prisons-and-offenders-mental-illness).

26. Despite this institutional knowledge, St. Clair County Jail has no formal policies, procedures, or regulations regarding suicide prevention. Further, the employees at St. Clair County Jail are not adequately trained in suicide prevention—their training consists of one 8 hour class on mental health and suicide prevention. Thus, Jail employees do not have the training or resources to sufficiently monitor and protect detainees who are at risk for suicide.

27. Additionally, at all times relevant to the events at issue in this case, St. Clair County Jail was over capacity. Specifically, on March 11, 2014, the day Mr. Jurcich committed suicide, the Jail was over-populated by 46 detainees.

28. On information and belief, during this period of overcrowding, the Jail was also understaffed. The understaffing contributed to the ineffective medical and mental health care at the Jail.

29. On information and belief, the overcrowding at the Jail also contributed to poor and unsafe living conditions: the Jail was filthy; the toilets, sinks, and showers were unsanitary; inmates were denied cleaning materials; inmates were forced to sleep on the filthy floors; foul odors of human waste were prevalent; and the Jail was infested with rodents and insects.

30. Mr. Jurcich exhibited several of the suicide risk factors—he was a young male with a history of mental health issues and substance abuse problems. The overcrowding and poor living conditions at the Jail further exacerbated his mental health condition.

31. Mr. Jurcich verbalized his suicidal thoughts with other persons detained at the Jail. One person who was housed at the Jail at all times relevant to the events at issue in this case reports that Mr. Jurcich spoke to him about his problems and his suicidal thoughts. This person informed Defendant Officer Chris Lanzante that Mr. Jurcich said he was suicidal, and Defendant Officer Lanzante simply responded: "He's just going to be another dead mother f***er then."

32. Defendant Officer Lanzante refused to accommodate Mr. Jurcich's disability by failing to immediately move him to a suicide-proof cell upon learning about Mr. Jurcich's intent to kill himself.

33. In the hours leading up to Mr. Jurcich's suicide, the officers failed to adequately conduct regularly scheduled cell checks. The officers never conducted a safety check on Mr. Jurcich after he was moved to the maximum security cell.

34. The Defendants knew Mr. Jurcich was a suicide risk and they failed to take measures to monitor and protect him—they failed to provide him adequate mental health services, they failed to place him in a suicide-proof cell, and they failed to conduct regular checks on him while he was in his cell. By their actions, the Defendants intentionally disregarded the known and substantial risk that Mr. Jurcich would harm himself while in their custody.

35. On March 11, 2014, around 6:40 p.m., Defendant Officer Jon Knyff discovered Mr. Jurcich hanging from his cell bars. One end of a blue sheet was tied across the upper bar of the inner cell door and the other end was looped around Mr. Jurcich's neck.

36. Mr. Jurcich was then alive but unconscious. He was transported to St. Elizabeth's Hospital where he died two days later on March 13, 2014.

37. On information and belief, other Jail staff who had knowledge of the fact that Mr. Jurcich was a suicide risk and failed to take any measures to monitor and protect him are Defendants Major Phillip McLaurin, Lieutenant John Fulton, Sergeant Brian Cunningham, Officer Dane Brueggemann, Officer Howard Kurtz, Officer Leslie Rivera, Officer Mike Ripperda, Officer Nicole Liebig, Officer Charles Germaine, Nurse Brandy Nichols, Nurse Sandra Thurman, Doctor Muddasani Reddy, and John Does 1-4.

## COUNT I
## Failure to Protect in Violation of the Fourteenth Amendment under 42 U.S.C. § 1983

38. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

39. Count I is alleged against all the individual Defendants.

40. Under settled United States Supreme Court authority, and in accordance with the Fourteenth Amendment, Mr. Jurcich was entitled to be free from a known and unreasonable risk of serious harm while in the custody of the St. Clair County Jail.

41. In violation of the Fourteenth Amendment, the individual Defendants knew of and disregarded a substantial risk of serious harm—that Mr. Jurcich would commit suicide.

42. In the alternative, the individual Defendants disregarded an obvious risk of serious harm or unreasonably disregarded a risk of serious harm.[1]

43. The individual Defendants' above-described actions and omissions were undertaken with malice and/or reckless disregard for Mr. Jurcich's constitutional rights.

44. As a result of the unjustified and unconstitutional conduct of the individual Defendants, Mr. Jurcich experienced pain, suffering, emotional distress, injury, and ultimately, death.

45. The Defendants' actions and omissions were the direct and proximate cause of the violations of Mr. Jurcich's constitutional rights, of Mr. Jurcich's death, and of the damages suffered by his heirs.

---

[1] This portion of the claim is pled on the basis of "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

## COUNT II
## Wexford's Constitutional Liability under 42 U.S.C. § 1983

46. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

47. Count II is alleged against Defendant Wexford.

48. Defendant Wexford was responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding the provision of medical and mental health care to detainees at St. Clair County Jail.

49. Defendant Wexford failed to provide adequate training and supervision of its medical and mental health care staff at the Jail, thereby allowing for the widespread practice by its employees under which detainees with serious mental health issues were routinely denied access to proper treatment and suicide prevention care.

50. Defendant Wexford's actions were the direct and proximate cause of the violations of Mr. Jurcich's constitutional rights, of Mr. Jurcich's death, and of the damages suffered by his heirs.

51. Defendant Wexford is liable in respondeat superior for the actions of its employees and/or agents. In the alternative, Defendant Wexford is liable for the policy, practice, and custom of providing inadequate mental health care to detainees at the Jail.[2]

---

[2] Under current law, Plaintiff must plead a policy or practice under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), in order to recover under Section 1983 against a private corporation that contracts with a government actor—*respondeat superior* does not apply. However, the Seventh Circuit has questioned whether the *Monell* policy or practice requirement, as opposed to ordinary *respondeat superior*, should apply in this circumstance. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 786 (7th Cir. 2014). Accordingly, *Monell* and *respondeat superior* liability are pled in the alternative. The *respondeat superior* claim is pled on the basis of "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

## COUNT III
### Excessive Force under 42 U.S.C. § 1983

52. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

53. Count III is alleged against Defendants Officer Wagener, Officer Harris, Officer Beattie, Officer Mesey, and Officer Walter.

54. These Defendants purposely or knowingly used force on Mr. Jurcich, and the force used was objectively unreasonable, when they tackled him to the floor, repeatedly kneed him while on the floor, and body slammed him while on the floor, all because Mr. Jurcich allegedly refused to return to his cell.

55. These Defendants' above-described actions were undertaken with malice and/or reckless disregard for Mr. Jurcich's constitutional rights.

56. These Defendants' actions were the direct and proximate cause of the violations of Mr. Jurcich's constitutional rights and of the damages suffered by Mr. Jurcich, including pain, suffering, emotional distress, and injury.

## COUNT IV
### *Monell* Claim under 42 U.S.C. § 1983

57. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

58. Count IV is alleged against Defendant Sheriff Watson in his official capacity.

59. In addition to Mr. Jurcich, two other detainees at St. Clair Count Jail committed suicide within the last two years:

(a) **Bradley C. Scarpi**, a thirty-three year old, committed suicide a month after Mr. Jurcich on May 23, 2014.  Mr. Scarpi hung himself hours after being re-housed in cell block E-Max, cell #5.

(b) **Damon E. Stidimire**, a nineteen-year-old, committed suicide on October 29, 2015.  Mr. Stidimire hung himself in cell block C, cell #4.

60. On information and belief, St. Clair County Jail does not have any suicide prevention policies in place.

61. During the relevant time period, Defendant Sheriff Watson had notice of widespread practices by employees at the St. Clair County Jail under which detainees with mental health issues were routinely denied access to proper mental health treatment, and detainees who were at risk of suicide were routinely denied access to safe and secure suicide prevention cells.  These widespread practices are a result of the lack of formal policies, training, and supervision on the proper way to deal with detainees with mental health problems.

62. These widespread practices were allowed to flourish—and become so well settled as to constitute de facto policy of the St. Clair County Sheriff's Department—because governmental policymakers and authority over the same, namely, Sheriff Watson, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

63. Mr. Jurcich's injuries, and ultimately his death, were caused in substantial part by these widespread policies, practices, and procedures promulgated by the St. Clair County Sheriff's Department.  These policies, practices, and procedures that were the cause of Mr. Jurcich's death were also the cause of Mr. Scarpi's and Mr. Stidimire's deaths.

## COUNT V
## Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132

64.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

65.     Count V is alleged against all the individual Defendants.

66.     As described more fully in the preceding paragraphs, Mr. Jurcich is a qualified person with a disability under the Americans with Disabilities Act and his disability was known to the individual Defendants. As a result, the Defendants had an obligation to accommodate his disability by housing him in a suicide-proof cell. The Defendants intentionally failed to accommodate Mr. Jurcich's disability, and these failures led to Mr. Jurcich's death.

## COUNT VI
## State Law Claim for Wrongful Death

67.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

68.     Count VI is alleged against all the individual Defendants.

69.     As described more fully in the preceding paragraphs, the individual Defendants knew that Mr. Jurcich had mental health problems and should be monitored as a suicide risk, but failed to have him under such watch, resulting in Mr. Jurcich's wrongful death.

70.     By their acts and omissions, the individual Defendants breached their duty to provide for Mr. Jurcich's health and safety and were the proximate cause of Mr. Jurcich's death and the injuries to his hers

71.     The individual Defendants' above-described actions and omissions were undertaken with malice and/or reckless disregard for Mr. Jurcich's rights.

72. Mr. Jurcich's next of kin is his 13-year-old son, Josiah Parker. Plaintiff, as administrator of the estate and on behalf of the next of kin, claims damages for the wrongful death of Mr. Jurcich, and for the loss of his services, protection, care, future income, assistance, society, companionship, comfort, guidance, counsel and advice, as well as for the mental anguish caused by this loss, as well as for funeral and other expenses and damages pursuant to 740 ILCS 180/1, commonly referred to as the Illinois Wrongful Death Act.

## COUNT VII
### State Law Claim for Respondeat Superior

73. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

74. Count VII is alleged against Defendant Sheriff Watson.

75. In committing the acts alleged in the preceding paragraphs, the individual defendants were employees, members, and agents of the St. Clair County Sheriff's Department, acting at all relevant times within the scope of their employment.

76. Defendant Sheriff Watson is liable as principal for all torts committed by his agents.

## COUNT VIII
### State Law Claim for Indemnification

77. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

78. Count VIII is alleged against Defendant St. Clair County.

79. Illinois law provides that public entities are directed to pay ant tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

80. The individual Defendants were employees of the St. Clair County Sheriff's Department who acted within the scope of their employment in committing the misconduct described above.

81. St. Clair County is obligated to pay any judgment entered against Sheriff Watson in an official capacity.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Dawn Corbier, as Administrator of the estate of Joshua B. Jurcich, prays that this Court enter judgment in her favor against Defendants, awarding compensatory damages, costs and attorneys' fees, and punitive damages against each of the Defendants in their individual capacities, and for such further additional relief as this Court may deem appropriate and just.

## JURY DEMAND

Plaintiff demands trial by jury.


Dated: March 10, 2016

                                        Respectfully submitted,

                                        **DAWN CORBIER**

                                        By: /s/ Vanessa del Valle
                                              One of her attorneys

Locke E. Bowman
l-bowman@law.northwestern.edu
Sheila A. Bedi
sheila.bedi@law.northwestern.edu
David M. Shapiro
david.shapiro@law.northwestern.edu
Vanessa del Valle
vanessa.delvalle@law.northwestern.edu
Roderick and Solange MacArthur Justice Center

Northwestern University School of Law
375 East Chicago Avenue
Chicago, IL 60611
(312) 503-1271

LaToya M. Berry
Law Offices of LaToya M. Berry
901 West Main
Belleville, IL 62220
(618) 567-4837
missberry_esq@yahoo.com