IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAWN CORBIER, as Administrator of the )
ESTATE OF JOSHUA B. JURCICH, )
)
      Plaintiff, )
)   Case No. 16-CV-257-SMY-SCW
vs. )
)
ST. CLAIR COUNTY SHERIFF )
RICHARD WATSON, *et al.*, )
)
      Defendants. )

# **MEMORANDUM AND ORDER**

This matter is before the Court for consideration of the Motion to Dismiss Plaintiff's Second Amended Complaint filed by Defendants Sheriff Richard Watson, Major Phillip McLaurin, St. Clair County, Officer Steve J. Frierdich, Officer James D. Wagener, Sergeant David Nichols, Officer Mark J. Harris, Officer Dante S. Beattie, Officer Thomas Mesey, Officer Eric L Walter, Lieutenant Nancy Sutherlin, Officer Patrick Fulton, and Officer Jon Knyff (Doc. 239). Plaintiff filed a Response (Doc. 240). For the following reasons, the Motion will be **GRANTED IN PART**.

### **The Second Amended Complaint**

Plaintiff Dawn Corbier, Administrator of the Estate of decedent Joshua Jurcich, filed a Second Amended Complaint, making the following relevant allegations (Doc. 211): Joshua Jurcich was arrested for possession of a controlled substance and taken to the St. Clair County Jail ("the Jail") on March 6, 2014. (Id. at ¶ 23). Jurcich had previously been detained at the Jail 16 times over a 16 year period. (Id. at ¶15). On at least seven of these occasions, Jurcich had informed the Jail staff that he suffered from mental health problems, and on at least one

occasion, a booking officer noted that Jurcich was suicidal. (Id.). Jurcich was diagnosed with Bipolar Disorder by Jail medical staff in 2008 and 2013. (Id. at ¶16).

At the time of the March 6, 2014 detention, the Jail was overcrowded, understaffed and unsanitary. (Id. at ¶¶ 57-59). During intake, Defendant Officer Steven J. Frierdich gave Jurcich a mental health screening and referred him for further mental health evaluation. (Id. at ¶ 24). On March 9, 2014 Jurcich informed Nurse Sandra Thurman that he was "dope sick" (withdrawing from heroin) and had been diagnosed with scabies. (Id. at ¶ 25). Nurse Thurman placed Jurcich in medical segregation. (Id. at ¶ 28).

Three days later (on March 11, 2014), Defendant Officers James D. Wagener, Mark J. Harris, Dante S. Beattie, Thomas Mesey, and Eric L. Walter beat Jurcich for refusing to return to his medical segregation cell. (Id. at ¶¶ 35-36). Defendants Lieutenant Sutherlin and Mesey then escorted Jurcich to the medical office where he was examined by Nurse Reuter. (Id. at ¶¶ 37-38). During the examination, which was conducted in the presence of the correctional officers, Jurcich informed Reuter that he was taking "lots" of psychotropic medications. (Id. at ¶¶ 39-40). Nevertheless, Reuter approved his placement in segregation. (Id. at ¶ 38). Jurcich was escorted to a maximum security segregation cell by Sutherlin, Mesey, Fulton, and Sergeant Missey (formerly a defendant in this action). (Id. at ¶ 49).

Jurcich exhibited several "suicide risk factors" such as being a young male with a history of mental health and substance abuse issues, which combined with overcrowding and poor living conditions to exacerbate his likelihood of self-harm. (Id. at ¶¶ 59, 60). Jurcich verbalized suicidal thoughts to fellow detainees. (Id. at ¶61).

On the evening of March 11, 2014, Defendant Officer Knyff found Jurcich unconscious in his cell from a suicide attempt. (Id. at ¶ 65-66). He was transported to St. Elizabeth's Hospital and died two days later. (Id. at ¶66).

Defendant Major McLaurin supervised the Jail and its staff during the relevant period and knew about the beating, the transfer to maximum security segregation, and that Jurcich was a suicide risk. (Id. at ¶ 68). The Jail had no formal policies, procedures or regulations regarding suicide prevention, and inadequate staff training in that area. (Id. at ¶ 56). There were 14 suicide attempts at the Jail between January 2014 and October 2015, and 2 detainee suicides in the two years after Jurcich's death. (Id. at ¶¶ 91, 92).

Plaintiff asserts seven claims in the Second Amended Complaint: Count I is brought under 42 U.S.C. § 1983 and alleges that the individual defendants (those other than St. Clair County and Sheriff Watson) violated Jurcich's constitutional rights by knowingly disregarding the risk that he would commit suicide; Count III asserts that Wagener, Harris, Beattie, Mesey and Walter used excessive force on him in violation of 42 U.S.C. § 1983; Count IV asserts a § 1983 *Monell* claim against Sheriff Watson in his official capacity, based on Jail policies and procedures; Count V, brought under the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12132, alleges that Sheriff Watson is liable in his official capacity for the defendants' intentional failure to accommodate Jurcich's disability; Count VI asserts a wrongful death claim under Illinois state law against the individual defendants; Count VII alleges that Sheriff Watson is liable in his official capacity for "all torts committed by his agents" under a theory of *respondeat superior*; and Count VIII alleges that St. Clair County is liable for indemnification of the other

defendants.[1]  Defendant moves to dismiss each Count pursuant to *F.R.C.P.* 12(b)(6) for failure to state a claim.

**Legal Standard**

To survive a motion to dismiss for failure to state a claim under *F.R.C.P.* 12(b)(6), a Complaint must "state a claim to relief that is plausible on its face." *Lodholtz v. York Risk Servs. Group, Inc.,* 778 F.3d 635, 639 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  The Court must also draw all reasonable inferences and facts in favor of the nonmovant.  *See Vesely v. Armslist LLC,* 762 F.3d 661, 664 (7th Cir. 2014).

**Discussion**

*Count I: Failure to Protect*

Plaintiff alleges that all of the individual defendants are liable because they knew or should have known that Jurcich was a danger to himself and failed to protect him.  Formerly, a plaintiff in a failure to protect claim under 42 U.S.C. § 1983 was required to allege facts showing that the plaintiff (or for purposes of this case, Plaintiff's decedent) (1) was detained under conditions posing substantial risk of serious harm and (2) the defendants acted with deliberate indifference to his health or safety.  *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (citation omitted).  This was the standard regardless of whether the plaintiff's decedent

---

[1] The Second Amended Complaint also contains Count II which asserts claims against parties which have been dismissed from the case.  Therefore, Count II will be dismissed and will not be addressed in this Order.

was an incarcerated individual or a pretrial detainee. *Washington v. LaPorte Cty. Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002).

Recently however, the Seventh Circuit noted in *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) that the two statutes are not functionally identical, citing the distinction made by the Supreme Court in *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472–73 (2015). In *Kinglsey*, which involved an excessive use of force claim by a detainee, the Supreme Court held that convicted prisoners must bring excessive force claims under the Eighth Amendment's cruel and unusual punishment clause, while pretrial detainees' rights spring from the Fourteenth Amendment's due process clause. Significantly, for an Eighth Amendment excessive force claim, the "core inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). There is a subjective element which requires a finder of fact to "inquire into [the] prison official's state of mind" to determine whether a constitutional violation has occurred. *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005) (quotation omitted). By contrast, to prevail on an excessive force claim under the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 135 S. Ct. at 2473.

In *Miranda*, the Seventh Circuit extended the *Kingsley* analysis to deliberate indifference to a medical need claims. *Miranda*, 900 F.3d at 352-53. Under an objective standard, a plaintiff must only show that a defendant "knew, or should have known, that the condition posed an excessive risk to health or safety" and "failed to act with reasonable care to mitigate the risk." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). This is still a higher standard than negligence, or even gross negligence and is "akin to reckless disregard." *Miranda,* 900 F.3d at

353. By logical extension, this Court finds that the *Miranda* analysis also applies to failure to protect claims.

"In prison suicide cases, the objective element is met by virtue of the suicide itself, as it goes without saying that suicide is a serious harm." *Collins v. Seeman*, 462 F.3d 757, 760–61 (7th Cir. 2006) (quotations omitted). The question then becomes whether the individual defendants "knew or should have known" that Jurcich posed a serious risk to commit suicide and yet failed to act with reasonable care to prevent him from doing so.

Plaintiff maintains that she has sufficiently alleged that each individual defendant knew or should have known that Jurcich was a high risk for suicide. Specifically, she points to her allegations that Jurcich had been booked into the Jail 16 times in the preceding 16 years, that he had informed officers or medical staff on at least seven prior occasions that he had mental health issues (including at least one instance of suicidal ideation), and that he had been noted by Jail staff on a number of prior booking forms and in prior medical records to have mental health and substance abuse issues, and argues it is "reasonable to infer that all the individual Defendant Officers had access to his booking forms and medical records and therefore must have known about his mental health issues." (Doc. 240 at 5).

However, there is no allegation from which the Court can reasonably infer that Officers Wagener, Harris, Beattie, Fulton, Walter, or Knyff had access to either the booking forms or medical records, or that they had reason to have checked those records. Further, Plaintiff's observation that it is "widely known throughout the correctional field and extensively documented that detainees housed in segregation commit suicide at a rate several times greater than detainees in the general correctional population" is too generalized to impute knowledge to

the individual corrections officers that Jurcich was mentally ill and suicidal. For these reasons, Count I will be dismissed to Defendants Wagener, Harris, Beattie, Fulton, Walter, and Knyff.

As to the remaining individual defendants, Plaintiff alleges that Officer Frierdich booked Jurcich into the Jail on March 6, 2014, noted "mental" in the booking forms, and referred Jurcich to the Health Care Unit for evaluation. Plaintiff also alleges that Lieutenant Sutherlin and Officer Mesey escorted Jurcich to and from the HCU on the day he committed suicide, and were present during Nurse Reuter's examination when Jurcich made the statement that he was on "lots of psychotropic medications." Finally, Plaintiff alleges that Defendant McLaurin was responsible for supervising and managing all aspects of Jail operations, and that he was aware that Jurcich had been beaten by correctional staff, that he had been placed in segregation and that he was a suicide risk. (Doc. 211 at ¶ 68). These allegations are sufficient to state a colorable failure to protect claim against these defendants.

### *Count III: Excessive Force*

In Count III, Plaintiff alleges that Defendants Wagener, Harris, Beattie, Mesey, and Walter used excessive force on Jurcich after he refused to go back to his medical segregation cell on March 11, 2014. The defendants argue that the force alleged in the Second Amended Complaint was objectively reasonable under the circumstances. As previously discussed, a pretrial detainee's right to be free from excessive force flows from the Fourteenth Amendment, and therefore, Plaintiff "must show only that the force purposely or knowingly used against [Jurcich] was objectively unreasonable." *Kingsley*, 135 S. Ct. at 2473. Ultimately, whether the force used against Jurcich, if any, was objectively reasonable or unreasonable under the circumstances is an issue for the finder of fact and is not required to be proven by Plaintiff in her

Complaint. Plaintiff's allegations are sufficient to state an excessive force claim at the pleading stage. Therefore, Defendants' motion to dismiss Count III is denied.

### *Count IV: Monell Claim*

Plaintiff asserts that Defendant Watson, in his official capacity as the St. Clair County Sheriff, was deliberately indifferent to the serious risk that Jurcich would commit suicide, because the jail had no suicide prevention policy, provided inadequate training and supervision for employees regarding detainee suicide prevention, and routinely denied detainees with mental health problems access to mental health professionals and suicide-proof cells. A local governmental entity, such as a sheriff's department, may not be held liable under § 1983 on a *respondeat superior* theory. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, it can be liable under § 1983 if (1) it had an express policy calling for constitutional violations, (2) it had a widespread practice of constitutional violations that was so permanent and well settled as to constitute a custom or usage with the force of law, or (3) if a person with final policymaking authority for the county caused the constitutional violation. *Id.* at 694; *see also McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). Put another way, a governmental body is liable only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," is the moving force behind the constitutional violation. *Monell*, 436 U.S. at 694.

Here, Plaintiff alleges that the policies (or lack of policy) and widespread practices of the St. Clair County Sheriff's Department were the moving force behind the failure to protect Jurcich from a high risk of self-harm at the Jail. This is sufficient to state a *Monell* claim for deliberate indifference to Jurcich's safety needs.

Defendant Watson argues that other allegations in the Second Amended Complaint undermine the allegation that there was no suicide prevention policy; specifically, allegations noting the booking process that includes checking whether a detainee has suicidal tendencies or other mental health issues. But merely noting the fact that someone may be suicidal does not constitute a "suicide prevention policy". If Plaintiff's allegations are taken as true, they state a claim under *Monell*. As such, Defendant Watson's motion to dismiss Count IV is denied.

### *Count V: Americans with Disabilities Act Claim*

Title II of the Americans with Disabilities Act ("the ADA") provides that no qualified person with a disability shall "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. "Disability" includes "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(a). Disability discrimination under the ADA can be established by showing either that: "(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *A.H. by Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 592–93 (7th Cir. 2018) (quotation omitted).

First, Defendants argue that Plaintiff's assertion that Jurcich had a "qualifying disability" and a "serious mental illness" fails to allege Jurcich's disability with sufficient specificity. However, Plaintiff also specifically alleges that Jurcich was diagnosed with Bipolar Disorder during two of previous detentions at the Jail – once by former defendant Dr. Reddy (the psychiatrist retained by St. Clair County Jail) and once by a mental health screener whose diagnosis was then confirmed by Dr. Reddy. Although Plaintiff has not specifically stated that

Jurcich's Bipolar Disorder substantially limited one or more life activities, the allegation that it was one of the factors that contributed to his suicide, allows a reasonable inference that it interfered with his life activities at this juncture.

Defendants next attempt to frame Plaintiff's claim as an allegation that Jurcich's disability was his suicidality, and suggest that there is a logical inconsistency in the claim because Jurcich was not denied anything that would be afforded to a non-disabled (i.e. not suicidal) inmate. This argument fails on two grounds. First, it misstates the issue. Jurcich's alleged mental illness is the disability, and his suicidality was a manifestation of that disability. Second, the "service" that Jurcich was allegedly denied was access to a safe cell, which (based on his disability) allegedly called for an accommodation in the form of a "suicide-proof" cell. Plaintiff has adequately pleaded the claim, and dismissal is denied as to this Count.

### *Counts VI and VII: Illinois Wrongful Death Claim and Respondeat Superior Claim*

Defendants argue that Plaintiff's state law Wrongful Death claim (740 ILCS 180/1) and related *respondeat superior* claim are time-barred. Jurcich died on March 13, 2014, and this action was commenced on March 10, 2016. The wrongful death claim is brought for the benefit of Jurcich's minor son (the sole next of kin), who was 13 at the time of filing. (Doc. 211 at ¶ 105).

The statutes of limitations for claims grounded in state law are governed by the law of that state. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp*., 665 F.3d 930, 935 (7th Cir. 2012). The default statute of limitations period for an Illinois wrongful death claim is two years after the death of the person at issue. 740 ILCS 180/2(d). However, under the statute, if a claim beneficiary is under the age of 18 at the time the cause of action accrues, "he or she may cause such action to be brought within 2 years after attainment of the age of 18." 740 ILCS 180/2(f).

Relatedly, the Illinois Local Governmental and Governmental Employees Tort Immunity Act provides for a one-year statute of limitations for claims against local governmental bodies and their employees in most cases. 740 ILCS 10/8-101(a).

In the medical malpractice wrongful death context, the Illinois Supreme Court has held that the Wrongful Death Act's tolling during a beneficiary's minority prevails over the Tort Immunity Act's limitation, but that the minor has only one year to file upon attaining majority. *Ferguson v. McKenzie*, 780 N.E.2d 660 (Ill. 2001). This holding effectuates both statutory provisions, and the Court will apply this principle in this case. Because Plaintiff brought the claim during the beneficiary's minority, Counts VI and VII will not be dismissed as time barred.

### Count VIII: Indemnification

Lastly, Defendants move to dismiss the indemnification claim against St. Clair County on the basis that there can be no indemnification claim if all the preceding Counts are dismissed. Since the preceding Counts survive dismissal at this stage, this argument fails.

### Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 239) is **GRANTED IN PART**; Count I is hereby **DISMISSED without prejudice** as to Defendants Wagener, Harris, Beattie, Fulton, Walter, and Knyff. The Motion is **DENIED** as to all remaining Counts and defendants.

**IT IS SO ORDERED.**

**DATED: October 4, 2018**

                                             **s/ Staci M. Yandle**
                                             **STACI M. YANDLE**
                                             **United States District Judge**