IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAWN CORBIER, as Administrator of the )
ESTATE OF JOSHUA B. JURCICH, )
)
      Plaintiff, )
) Case No. 16-CV-257-SMY-SCW
vs. )
)
ST. CLAIR COUNTY SHERIFF )
RICHARD WATSON, *et al.*, )
)
      Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court for consideration of the Motion to Dismiss Count I of Plaintiff's Third Amended Complaint, filed by Defendants David Nichols, Patrick Fulton, and Jon Knyff (Doc. 271). Count I sets forth a failure to protect from the risk of suicide claim under 42 U.S.C. § 1983 against the individual defendants (those other than St. Clair County and Sheriff Watson). Defendants move to dismiss Count I pursuant to *F.R.C.P.* 12(b)(6). Plaintiff filed a Response (Doc. 283). For the following reasons, the Motion will be **GRANTED in part** and **DENIED in part**.

### The Third Amended Complaint

Plaintiff Dawn Corbier, Administrator of the Estate of Joshua Jurcich, deceased, makes the following relevant allegations in the Third Amended Complaint (Doc. 267): Joshua Jurcich was arrested for possession of a controlled substance and taken to the St. Clair County Jail ("the Jail") on March 6, 2014. (Id. at ¶ 20). Jurcich had previously been detained at the Jail 16 times over a 16 year period. (Id. at ¶12). On at least seven of these occasions, Jurcich had informed the Jail staff that he suffered from mental health problems, and on at least one occasion, a

booking officer noted that Jurcich was suicidal. (Id.). Jurcich was diagnosed with Bipolar Disorder by jail medical staff in 2008 and 2013. (Id. at ¶13). Jurcich exhibited several "suicide risk factors" such as being a young male with a history of mental health and substance abuse issues, which combined with overcrowding and poor living conditions to exacerbate his likelihood of self-harm. (Id. at ¶ 57).

At the time of Jurcich's March 6, 2014 detention, the Jail was overcrowded, understaffed and unsanitary. (Id. at ¶¶ 54-56). During intake, Defendant Officer Steven J. Frierdich gave Jurcich a mental health screening and referred him for further mental health evaluation. (Id. at ¶ 21). On March 9, 2014 Jurcich informed Nurse Sandra Thurman that he was "dope sick" (withdrawing from heroin) and had been diagnosed with scabies. (Id. at ¶ 22). Thurman placed Jurcich in medical segregation. (Id. at ¶ 25).

On March 11, 2014, Defendant Officers James D. Wagener, Mark J. Harris, Dante S. Beattie, Thomas Mesey, and Eric L. Walter allegedly beat Jurcich for refusing to return to his medical segregation cell. (Id. at ¶¶ 32-34). Lieutenant Sutherlin and Mesey then escorted Jurcich to the medical office where he was examined by Nurse Reuter. (Id. at ¶¶ 34-35). During the examination which was conducted in the presence of the correctional officers, Jurcich informed Reuter that he was taking "lots" of psychotropic medications. (Id. at ¶¶ 36-37). Nevertheless, Reuter approved his placement in segregation. (Id. at ¶ 44). Jurcich was escorted to a maximum security segregation cell by Sutherlin, Mesey, Fulton, and Sergeant Missey. (Id. at ¶ 46). He was later taken back to the medical office for a chest x-ray, and was escorted back to his cell by Sergeant Nichols. (Id. at ¶ 58). During the walk back, Jurcich and Nichols spoke, and Jurcich appeared to hesitate before going back into the segregation unit. (Id.). Nichols appeared to "mock" Jurcich before he acquiesced and walked back in. (Id.).

Once Jurich was back in his cell, Defendant Officer Fulton was on duty for cell checks. (Id. at ¶ 59). During his shift, Fulton spoke with Jurich at least twice; entering the cell for nearly five minutes on one occasion. (Id. at ¶¶ 59-60). Officer Fulton's other cell checks were cursory, with him not even looking into Jurich's cell. (Id. at ¶ 61). After Fulton's shift ended, Defendant Officer Knyff took over responsibility for cell checks. (Id. at ¶ 62).

Knyff spoke with Jurich at his 5:37 p.m. check, and then conducted two more cursory cell checks. (Id. at ¶ 63). A detainee in the same unit heard Jurich tell Fulton and Knyff that if he did not get to see a nurse or get a shower, he was going to kill himself. (Id. at ¶ 64). A second detainee in the unit heard Jurich tell Knyff that he was going to kill himself. (Id. at ¶ 65). At approximately 6:40 p.m., Knyff found Jurich unconscious in his cell from a suicide attempt. (Id. at ¶ 68-69). He was transported to St. Elizabeth's Hospital and died two days later. (Id. at ¶69).

## **Discussion**

To survive a motion to dismiss for failure to state a claim under *F.R.C.P.* 12(b)(6), a Complaint must "state a claim to relief that is plausible on its face." *Lodholtz v. York Risk Servs. Group, Inc.,* 778 F.3d 635, 639 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court must also draw all reasonable inferences and facts in favor of the plaintiff. *See Vesely v. Armslist LLC,* 762 F.3d 661, 664 (7th Cir. 2014).

Plaintiff alleges that all of the individual defendants knew or should have known that Jurcich was a danger to himself, but failed to protect him. Because Jurcich was a pretrial detainee and not an inmate, Plaintiff's claim arises under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishment Clause. *See*, *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015); *Miranda v. County of Lake*, 900 F.3d 335, 350-351 (7th Cir. 2018).

Under *Kingsley* and *Miranda*, a pretrial detainee need only establish that the defendant's conduct was objectively unreasonable – not that the defendant was subjectively aware that it was unreasonable. *Miranda*, 900 F.3d at 352-53. In other words, a plaintiff must show that a defendant acted intentionally or recklessly as he "knew, or should have known, that the condition posed an excessive risk to health or safety" and "failed to act with reasonable care to mitigate the risk." *Id.* This is a more exacting standard than that required to prove negligence, or even gross negligence and is "akin to reckless disregard." *Id.*

As suicide clearly poses an excessive risk to health and safety, the question presented is whether Plaintiff sufficiently alleged that Nichols, Knyff and/or Fulton knew or should have known that Jurcich posed a serious risk to commit suicide and yet failed to act with reasonable care to prevent him from doing so. Defendants argue that Plaintiff has not pled facts adequate to meet this standard.

Taking Plaintiff's factual allegations as true and drawing reasonable inferences therefrom, the Court finds that Plaintiff has adequately pled a failure to protect claim against Knyff and Fulton. Specifically, Plaintiff alleges they each had at least one conversation with Jurcich leading up to his suicide attempt, and that according to other detainees who were in the area, Jurcich specifically communicated suicidal ideation or intent to Fulton and Knyff. These

facts would be sufficient, if proven at trial, to satisfy the "knew or should have known" requirement.

The same is not true with respect to Defendant Nichols. Plaintiff alleges that Nichols "was aware that Mr. Jurcich had been beaten by several officers for refusing to go back into medical segregation[,]" that Nichols had a conversation with Jurcich while escorting him back to his cell after his x-ray, and that "Nichols mocked Mr. Jurcich after Mr. Jurcich appeared hesitant and resistant to go back into F-Max." (Doc. 283 at 7). Plaintiff argues that it "is plausible to infer from these facts that during this exchange, Mr. Jurcich communicated his suicidal ideations to Sergeant Nichols and rather than move Mr. Jurcich to a suicide-proof cell, Sergeant Nichols mocked Mr. Jurcich and ordered him to go back into F-Max." (Id.). But what Plaintiff suggests is a plausible inference is nothing more than mere conjecture. As such, Count I must be **DISMISSED** as to Defendant Nichols.

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 271) is **GRANTED IN PART**; Count I is hereby **DISMISSED** as to Defendant Nichols. The Motion is **DENIED** as to Defendants Knyff and Fulton.

**IT IS SO ORDERED.**

**DATED: January 17, 2019**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**